IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Reworld Sumter Industrial, LLC, | ) | CASE NO.: 4:25-cv-05128-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM ORDER AND |
| | ) | OPINION ON PLAINTIFF'S MOTION |
| VEP Environmental, LLC; Vaquero | ) | FOR A PRELIMINARY INJUNCTION |
| Energy Partners, LLC; Scott Huard; | ) | AND DEFENDANTS' MOTION TO |
| Daniel Gordon; and Gary | ) | DISMISS |
| Higginbotham, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a trade secret misappropriation and breach of contract case. Plaintiff Reworld Sumter Industrial, LLC ("Reworld"), filed a Verified Complaint (DE 1) against Defendants VEP Environmental LLC, Vaquero Energy Partners LLC, Scott Huard, Daniel Gordon, and Gary Higginbotham (collectively, "Defendants"), asserting federal and state-law claims. Reworld has also filed a Motion for Temporary Restraining Order and Preliminary Injunction (DE 4) and a Motion to Expedite Discovery (DE 23). Defendants, in turn, have moved to dismiss the Complaint for lack of personal jurisdiction (DE 25) and for failure to state a claim, among other matters (DE 26). The motions have been fully briefed.

After reviewing the pleadings, motions, and memoranda submitted, the Court **denies without prejudice** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (DE 25), **denies** Defendants' Motion to Dismiss for Failure to State a Claim or for a More Definite Statement (DE 26), grants in part Plaintiff's Motion for

Preliminary Injunction (DE 4), **denies as moot** the request for a TRO, sets bond at $30,000, and **denies** Plaintiff's Motion for Expedited Discovery (DE 23).

## I.     BACKGROUND

### A.     Factual Background

The following facts are drawn from Plaintiff's Verified Complaint and its attached exhibits.[1] For purposes of resolving Defendants' Rule 12(b)(6) motion, the Court accepts these allegations as true and views them in the light most favorable to Plaintiff.

### 1. The Parties

Reworld is alleged to be a limited liability company with its principal office in Sumter, South Carolina.[2] (DE 1, Compl. ¶¶ 12–14.) Reworld alleges that it provides

---

[1]     On a Rule 12(b)(6) motion, a district court generally does not consider extrinsic evidence. The Court may, however, consider documents attached to the complaint or to a motion to dismiss, provided those documents are integral to the complaint and their authenticity is not disputed. *See Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Here, Plaintiff's restrictive covenant agreements and related exhibits attached to the Complaint are properly considered at this stage. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

[2]     Plaintiff pleads its own citizenship by reference to its principal office in South Carolina. For jurisdictional purposes, however, the citizenship of a limited liability company is determined by the citizenship of each of its members, not its principal office. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). That said, the Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Complaint pleads a claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(c). The Court exercises supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(a), as they form part of the same case or controversy.

Plaintiff also pleads diversity under 28 U.S.C. § 1332. On the current record, Plaintiff has clarified that its citizenship as a limited liability company is determined by the citizenship of each member in its ownership chain, which traces to a Delaware corporation; thus, Plaintiff is a Delaware citizen. The record does not yet definitively establish the citizenship of each member of the defendant LLCs (VEP Environmental LLC and Vaquero Energy Partners LLC). Accordingly, the Court does not rely on § 1332 at this juncture. This clarification resolves any earlier tension between references to Plaintiff's "principal office" in South Carolina (relevant to venue and factual context) and its legal citizenship for diversity

sustainable waste removal, recycling, and refinery support services throughout the United States and has developed competitively sensitive processes, pricing models, and client relationships. (*Id.* ¶¶ 49–53, 80–83, 100–02.)

Defendant VEP Environmental, LLC ("VEP"), is alleged to be a Texas limited liability company with its principal place of business in Galena Park, Texas. (*Id.* ¶ 19.) Defendant Vaquero Energy Partners, LLC ("Vaquero"), is alleged to be a Texas limited liability company with its principal place of business in Kingwood, Texas (VEP and Vaquero collectively "Corporate Defendants").[3] (*Id.* ¶ 20.)

The Individual Defendants are former senior employees of Plaintiff:

- Scott Huard ("Huard") – employed by Plaintiff beginning in 2016 as Manager of Business Development. (*Id.* ¶¶ 18, 48–51.)

- Daniel Gordon ("Gordon") – employed beginning in 2012, most recently as Solutions Sales Manager. (*Id.* ¶¶ 21, 67–71.)

- Gary Higginbotham ("Higginbotham") – employed beginning in 2013, most recently as Chief Commercial Officer for the Refinery Services Group. (*Id.* ¶¶ 24, 75–81.)

(Huard, Gordon, and Higginbotham collectively, "Individual Defendants.")

**2. Restrictive Covenant Agreements**

Reworld alleges that each Defendant executed restrictive covenant agreements ("RCAs") during their employment, which imposed duties of confidentiality, non-

---

purposes (governed by the citizenship of its members). Nothing herein precludes the parties from supplementing the record on citizenship; should complete diversity later be demonstrated, § 1332 would provide an alternative and independent basis.

[3]    For purposes of summarizing the pleadings, the Court recites Plaintiff's allegations regarding Defendants' principal places of business. Otherwise, the Court relies on the legal principles stated in footnote 2.

solicitation of clients, and restrictions on the use of proprietary information. (DE 1, Compl. ¶¶ 49–53, 69–72, 78–82.)

The RCAs allegedly prohibited the use or disclosure of Plaintiff's trade secrets or confidential information—including client identities, pricing data, and technical processes—and barred solicitation of Plaintiff's customers for one year following separation. (*Id.* ¶¶ 51–53, 72, 82–83.) Plaintiff alleges the RCAs contain valid South Carolina choice-of-law and forum selection provisions. (*Id.* ¶¶ 20, 23, 26, 56, 70, 71, 79.)

### 3. Alleged Conspiracy and Misappropriation

Plaintiff alleges that, while still employed at Reworld, the Individual Defendants conspired with VEP and Vaquero to misappropriate Plaintiff's confidential information and divert business opportunities. (*Id.* ¶¶ 84–91.) The Complaint asserts that Defendants used insider knowledge to undercut Plaintiff's pricing, solicit Plaintiff's clients, and capture multimillion-dollar contracts. (*Id.* ¶¶ 92–95, 118–29.)

### 4. Interference with Specific Clients and Opportunities

#### Client Z

Plaintiff alleges that in early 2025, it began discussions with Client Z regarding a kiln project in California. (DE 1, Compl. ¶¶ 99–107.) After Higginbotham learned of the opportunity, he allegedly notified Huard—by then affiliated with VEP—and worked with him to divert the project away from Plaintiff. (*Id.* ¶¶ 100–02.) Plaintiff contends that these communications were concealed from its management and intended to shift the business to Defendants. (*Id.* ¶¶ 103–07.)

4

### Client E

Plaintiff provided services to Client E but suspended them in 2024 with the expectation of resuming work in 2025. (DE 1, Compl. ¶¶ 108–09.) Huard and Gordon, who had substantial involvement with Client E while employed by Plaintiff, allegedly used confidential pricing data to assist VEP in preparing a competing proposal. (*Id.* ¶¶ 110–14.) Plaintiff further alleges that emails from Gordon's former Reworld account appeared in VEP communications concerning a proposal to Client E, showing his involvement in soliciting Client E for VEP. (*Id.* ¶¶ 115–17.) Higginbotham, while monitoring Gordon's former account, allegedly discovered these communications but withheld them from Plaintiff, instead forwarding them to his personal account. (*Id.* ¶¶ 118–23, 128.) Plaintiff contends this concealment allowed Defendants to undercut Plaintiff's pricing and secure a multimillion-dollar contract from Client E. (*Id.* ¶¶ 124–29.)

### Client PM

Plaintiff alleges that in May 2025, Higginbotham exchanged emails with Huard concerning pricing information for crude oil to assist VEP in soliciting business from Client PM. (*Id.* ¶ 133.) Plaintiff asserts this conduct constituted both misappropriation of confidential information and interference with prospective contractual relations. (*Id.*)

### Client FH

Plaintiff also alleges that Huard and other Defendants assisted VEP in soliciting Client FH, diverting additional business opportunities away from Plaintiff. (DE 1, Compl. ¶¶ 134–35.)

### 5. Alleged Trade Secret Theft and Concealment

Plaintiff further alleges that Defendants misappropriated proprietary refinery information. For example, Roberto "Beto" Gomez, a former employee who joined VEP, allegedly emailed confidential centrifuge and crude separation data from Plaintiff's account to his personal account before his departure. (*Id*. ¶¶ 140–49.) Gomez was later observed photographing Plaintiff's refinery equipment for the benefit of VEP. (*Id*. ¶¶ 140–42.) Around the same time, Higginbotham made an unusual request for a centrifuge sample, which Plaintiff contends was linked to Gomez's efforts to replicate its processes at VEP. (*Id*. ¶¶ 143–44.)

### 6. Causes of Action

Based on these allegations, Plaintiff asserts eight causes of action: breach of contract, tortious interference, unjust enrichment, violation of the South Carolina Unfair Trade Practices Act, breach of duty of loyalty, misappropriation under the South Carolina Trade Secrets Act, misappropriation under the Defend Trade Secrets Act, and civil conspiracy. (*Id*. ¶¶ 159–268.)

## B.  Procedural Background

Plaintiff filed its Verified Complaint on June 9, 2025, asserting federal and state-law claims against Defendants and attaching copies of the Restrictive Covenant Agreements and related exhibits. (DE 1.) On the same day, Plaintiff filed a Motion

for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion"). (DE 4.)

This case was initially assigned to the Columbia Division. On June 12, 2025, Defendants moved to change venue from the Columbia Division to the Florence Division because a substantial part of the events or omissions giving rise to the claims—including the alleged acquisition, use, and disclosure of confidential information and trade secrets and interference with client relationships connected to Plaintiff's Sumter, South Carolina operations—occurred here. (DE 12.) The Court granted the motion, and the caption was amended accordingly to reflect the Florence Division. (DE 19.)

On June 20, 2025, Defendants filed a consolidated opposition to Plaintiff's TRO/PI Motion. (DE 21.) Plaintiff filed its Reply in support of the TRO/PI Motion on July 7, 2025. (DE 31.)

Separately, on June 25, 2025, Plaintiff filed a Motion for Expedited Discovery in connection with the pending TRO/PI proceedings. (DE 23.) Plaintiff sought limited interrogatories and requests for production concerning communications among Defendants, their clients, and their use of Plaintiff's information. (*Id*.) On July 16, 2025, Defendants filed a memorandum in opposition to Plaintiff's Motion for Expedited Discovery. (DE 35.) Plaintiff filed a Reply in further support of its Motion for Expedited Discovery on July 23, 2025. (DE 38.)

On July 1, 2025, Defendants filed two motions to dismiss: (1) a Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) (DE 25), and (2) a

Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6), or, in the alternative, for a more definite statement under Rule 12(e) (DE 26). Plaintiff filed a consolidated Response in Opposition to both motions on July 15, 2025. (DE 34.) Defendants filed a Reply in further support of their motions on July 29, 2025. (DE 39.)

Accordingly, the following motions are fully briefed and ripe for resolution:

1. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (DE 4);

2. Plaintiff's Motion for Expedited Discovery (DE 23);

3. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (DE 25); and

4. Defendants' Motion to Dismiss for Failure to State a Claim, or for a More Definite Statement (DE 26).

## II.      LEGAL STANDARD

### A.      Rule 12(b)(6), Fed. R. Civ. P.

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it

8

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2), Fed. R. Civ. P.).

## B.     Rule 12(b)(2), Fed. R. Civ. P.

"Due process requires that the defendant be given adequate notice of the suit, and be subject to the personal jurisdiction of the court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Courts have determined that "[w]hen personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "This *prima facie* case analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* (internal quotation marks omitted). "A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by

the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted); *see also*, *Sunny Days Entertainment, LLC v. Traxxas, L.P.*, 376 F. Supp. 3d 654, 659 (D.S.C. 2019) ("South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause.") (citations omitted).

The party asserting jurisdiction must "ultimately [] prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, Inc., 334 F.3d 390, 396 (4th Cir. 2003). "Determining the extent of a State's judicial power over persons outside of its borders . . . can be undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). ". . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State." *Id.* at 712. "Unlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226.

C.    **Rule 12(e), Fed. R. Civ. P.**

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P.12(e). The Fourth Circuit has held that Rule 12(e) "must be read in conjunction with Rule 8." *Hodgson v. Va. Bapt. Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973). Rule 8(a) requires that a complaint contain three elements:

1. a short and plain statement of the grounds for the court's jurisdiction;

2. a short and plain statement of the claim showing that the pleader is entitled to relief; and

3. a demand for the relief sought.

*See* Fed. R. Civ. P. 8(a).

Therefore, if "the complaint conforms to Rule 8(a) and it is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement." *Hodgson*, 482 F.2d at 824. Courts have emphasized that Rule 12(e) is "designed to strike at unintelligibility rather than simple want of detail," and should be granted only when the complaint is "so vague and ambiguous that the defendant cannot frame a responsive pleading." *Pugh v. E.E.O.C.*, No. 13-cv-2862, 2014 WL 2964415, at *3 (D. Md. June 30, 2014). As a result, "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1376 (3d ed. May 20, 2025, update).

D.      **Rule 65, Fed. R. Civ. P.**

Rule 52(a)(2) of the Federal Rules of Civil Procedure provides that "[i]n granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its action." Rule 65 of the Federal Rules of Civil Procedure establishes the procedure for federal courts to grant preliminary injunctions. "A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020).

A plaintiff seeking a preliminary injunction must establish all four of the following criteria:

1.  that he is likely to succeed on the merits,

2.  that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief,

3.  that the balance of equities tips in his favor, and

4.  that the injunction is in the public interest.

*League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. *Winter*, 555 U.S. at 20–22. Likewise, a plaintiff must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. *Id.* Only then may the court proceed to consider whether the balance of equities tips in the plaintiff's favor, and then consider the public consequences of employing the extraordinary relief of injunction. *League of Women Voters of N.C.*, 769 F.3d at 250

(Motz, J., dissenting); *Williams Ohio Valley Midstream, LLC v. Kittle*, No. 23-2185, 2024 WL 3325532, at *3 (4th Cir. July 8, 2024) (noting that "[e]ach preliminary injunction factor must be 'satisfied as articulated'").

## III.    DISCUSSION

### A.    Personal Jurisdiction

Defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (DE 25.) They submit sworn declarations denying relevant South Carolina contacts and disputing the enforceability of the RCAs. (DE 21-1 through 21-5.) Plaintiff, in turn, has submitted sworn declarations with its Reply in support of preliminary injunctive relief (DE 31-1, 31-2, 31-3), which the Court considers along with the Verified Complaint and attached RCAs in determining whether Plaintiff has made a prima facie showing of personal jurisdiction. (DE 1, Exs. 1–6.) At this stage, the Court must determine whether Plaintiff has made a prima facie showing of personal jurisdiction, construing all facts and inferences in Plaintiff's favor. *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction under the Due Process Clause may be either general or specific. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). General jurisdiction exists when a defendant's contacts with the forum state are so continuous

and systematic as to render it "essentially at home" in the forum.[4] Specific jurisdiction, by contrast, is proper only where the claims arise out of or relate to the defendant's contacts with the forum state. *Id.* at 712. On this record, the Court concludes that it has specific jurisdiction over the Individual Defendants and, to a prima facie degree, over the Corporate Defendants.

### 1. Purposeful Availment

Plaintiff alleges that Individual Defendants each executed RCAs containing South Carolina choice-of-law and forum-selection provisions. (DE 1, Compl. ¶¶ 20, 23, 26, 56, 70, 71, 79.) These agreements are attached to the Complaint and are integral to the claims. *(Id.,* Exs. 1–6.) At the pleading stage, such provisions are evidence of purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76 (1985).

In addition, Plaintiff alleges Defendants directed their conduct toward South Carolina by misappropriating Plaintiff's confidential information and soliciting its clients, knowing Plaintiff maintains substantial operations in this state. (DE 1, Compl. ¶¶ 89–135.) Gordon, is alleged—and does not dispute—to be domiciled in South Carolina. (*Id.* ¶ 22; DE 21-4.) As to Huard, the record reflects a negotiated non-solicitation clause conditioned on voluntary resignation; the materials indicate his resignation was voluntary, rendering the clause applicable for purposes of this

---

[4]    Plaintiff does not assert general jurisdiction over the Defendants, and the record contains no evidence of the type of "continuous and systematic" contacts necessary to support general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Since Plaintiff has not established a prima facie basis for general jurisdiction, the Court confines its analysis to specific jurisdiction.

*preliminary* analysis. (*Id.* ¶¶ 62–65.) These facts, taken as true, satisfy purposeful availment at the prima facie stage.

### 2. Claims Arising from Forum-Related Activities

Plaintiff's causes of action arise directly from Defendants' alleged breaches of the RCAs and their alleged misappropriation of Plaintiff's trade secrets and client relationships. The Complaint details alleged diversion of contracts and opportunities with Clients Z, E, PM, and FH, all tied to Plaintiff's South Carolina operations. (*Id.* ¶¶ 89–149.) To that end, Plaintiff has made a prima facie showing of specific jurisdiction over Corporate Defendants based on purposeful direction of activities at South Carolina and alleged injury in the forum: the alleged use of Plaintiff's South Carolina-based confidential information and trade secrets; coordination with a South Carolina domiciliary (Gordon—as Defendants' submissions confirm) concerning client relationships; and alleged solicitation or diversion of business affecting the forum. These allegations, credited at this stage, suffice to establish a nexus between the forum, the defendants' conduct, and the claims, including under the "effects" test *Calder v. Jones*, 465 U.S. 783 (1984)).

### 3. Fair Play and Substantial Justice

Exercising jurisdiction over Defendants at this stage does not offend traditional notions of fair play and substantial justice. While Huard and Higginbotham assert Texas residence and VEP and Vaquero emphasize their lack of physical presence in South Carolina (DE 21-1, 21-2, 21-3, 21-5), Plaintiff alleges Defendants knowingly targeted a South Carolina company by breaching contractual obligations and misappropriating trade secrets. South Carolina has a legitimate

interest in adjudicating disputes involving forum-selection provisions and alleged injuries to a business headquartered in this state. On balance, jurisdiction is constitutionally reasonable.

### 4. Defendant-by-Defendant Application

- **Gordon** is domiciled in South Carolina. Jurisdiction is proper.

- **Huard and Higginbotham** are Texas residents. Each is alleged to have executed RCAs with South Carolina forum provisions and to have directed conduct toward this forum. At the prima facie stage, these allegations suffice, notwithstanding their declarations denying South Carolina contacts.

- **VEP and Vaquero** are Texas limited liability companies. Plaintiff alleges they conspired with the Individual Defendants to solicit Plaintiff's clients and misappropriate information, with foreseeable injury in South Carolina. These allegations are sufficient, at this stage, to support specific jurisdiction under the "effects" test.

### 5. Conclusion

Defendants' declarations (DE 21-1 through 21-5) contest Plaintiff's jurisdictional allegations, and the jurisdictional record remains incomplete at this stage. Nevertheless, considering Plaintiff's Verified Complaint, the RCAs attached to the pleadings (DE 1, Exs. 1–6), and the sworn declarations submitted with Plaintiff's Reply in support of preliminary injunctive relief (DE 31-1, 31-2, 31-3), and construing all facts and reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has made a prima facie showing of specific personal jurisdiction.

Accordingly, the Court denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (DE 25) without prejudice. Defendants may reassert their jurisdictional defenses on a fuller record, including evidence about the enforceability of the RCAs and the citizenship of the LLC members later.

16

## B.    Rule 12(b)(6) – Failure to State a Claim

Defendants move to dismiss the Complaint under Rule 12(b)(6), arguing that Plaintiff's allegations are vague, conclusory, and at times directed to non-parties. (DE 26; DE 39.) Defendants contend that any actionable conduct alleged in the Complaint concerns Reworld Advanced, LLC, rather than Plaintiff. (DE 39 at 3–5.) These arguments, however, largely go to the merits of Plaintiff's claims and the identity of the proper party in interest, not the sufficiency of the pleadings. On a Rule 12(b)(6) motion, the Court's task is limited to testing the adequacy of the Complaint, not resolving factual disputes or assessing defenses.[5] *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Taking the allegations in the Verified Complaint as true, Plaintiff has adequately alleged that it is the contracting party to the RCAs

---

[5]    Defendants argue that Plaintiff is not the proper party to enforce the restrictive covenant agreements because earlier agreements were executed with Sumter Transport Company/STC and not the current-named Plaintiff, and they further contend the RCAs lack consideration (e.g., recitations of $5.00 or "continued employment"). At the Rule 12(b)(6) stage, these contentions do not defeat plausibility. The Verified Complaint and its exhibits plausibly allege corporate continuity/successorship sufficient to permit enforcement, and they allege that the Individual Defendants executed RCAs at the inception of employment— an allegation that, if proven, supplies adequate consideration under South Carolina law. (DE 1, Compl. ¶¶ 8–11); *see also*, e.g., *Poole v. Incentives Unlimited, Inc.*, 345 S.C. 378, 382, 548 S.E.2d 207, 209 (2001) (initial employment is valid consideration); *Mathis v. Brown*, 389 S.C. 299, 310, 698 S.E.2d 773, 779 (2010).

To the extent Defendants contest the authenticity of agreements, the necessity of assignment language, or the factual details of name changes/organizational history, those are fact-bound disputes ill-suited to resolution on the pleadings and may be addressed after discovery and, if appropriate, on a fuller evidentiary record. The Court, therefore, denies dismissal without prejudice to renewal at summary judgment.

The Court notes that Plaintiff has also submitted sworn declarations (Weston, Costas, Burkhardt) with its reply in support of preliminary injunctive relief (DE 31-1 through 31-3) that further support continuity and enforceability; the Court considers those materials for interim relief, but does not rely on them for its Rule 12(b)(6) analysis so as to avoid converting the motions to summary judgment.

and that Defendants' conduct injured it. Defendants' contrary evidence may be raised at summary judgment, but it does not warrant dismissal under Rule 12(b)(6).

Against this framework, the Court addresses each cause of action in turn.[6]

## 1. Breach of Contract (Count I – Against Individual Defendants)

Under South Carolina law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) its breach, and (3) damages proximately caused by the breach. *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009). Plaintiff alleges that Huard, Gordon, and Higginbotham each executed RCAs containing confidentiality and non-solicitation obligations. (DE 1, Compl. ¶¶ 49–53, 69–72, 78–82; Exs. 1–6.) Plaintiff claims Defendants breached these agreements by misappropriating Plaintiff's confidential information and soliciting Plaintiff's clients for the benefit of VEP. (*Id.* ¶¶ 96–147, 159–75.)

The Complaint provides specific factual examples of breach. Plaintiff alleges Huard and Gordon used confidential pricing and client information to assist VEP in

---

[6]     Because Plaintiff asserts state-law claims under the Court's federal-question (DTSA) and supplemental jurisdiction, the Court applies South Carolina substantive law to those claims. *See Zahariev v. B&C Savannah Wildlife Enters., Inc.*, No. 23-1927, 2024 WL 3372909, at *3 (4th Cir. July 11, 2024) ("[A] federal court sitting in diversity or exercising supplemental jurisdiction over state law claims must apply state substantive law, but a federal court applies federal rules of procedure to its proceedings") (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). South Carolina choice-of-law principles enforce contractual provisions selecting governing law when the chosen state bears a reasonable relationship to the dispute. *Team IA, Inc. v. Lucas*, 395 S.C. 237, 717 S.E.2d 103, 108–09 (Ct. App. 2011).

The Restrictive Covenant Agreements at issue here contain such provisions. For example, the "Trade Secrets, Confidential Information, and Non-Solicitation Agreement" executed by Defendant Huard states: *"This Agreement shall be construed and interpreted in accordance with the laws of the State of South Carolina without regard to its conflicts of laws principles."* (DE 1-3 ¶ 9.) Similar provisions appear in the agreements executed by the other Individual Defendants. These contractual clauses, together with South Carolina's status as the forum state, confirm that South Carolina law governs Plaintiff's state-law claims.

winning a multimillion-dollar contract with Client E. (*Id.* ¶¶ 110–17, 124–29.) Plaintiff also alleges that Gordon and Huard coordinated with Higginbotham to divert a kiln opportunity with Client Z by sharing details of the project with VEP instead of Plaintiff. (*Id.* ¶¶ 96–107.) And Plaintiff claims that Higginbotham forwarded VEP's proposals to his personal email account while still employed, concealing Defendants' solicitation of Plaintiff's clients. (*Id.* ¶¶ 118–23, 128.) Plaintiff further alleges that Defendants used confidential pricing information to pursue opportunities with Client PM and assisted in diverting Client FH's business. (*Id.* ¶¶ 130–35, 136–58.)

Defendants contest the enforceability of the RCAs, but the agreements are attached to the Complaint, identify each signatory, and contain South Carolina choice-of-law provisions. At the pleading stage, these allegations and exhibits suffice to establish the existence of contracts, specific breaches of confidentiality and non-solicitation provisions, and damages in the form of lost contracts and goodwill. (*Id.* ¶¶ 159–75.) These allegations satisfy Rule 8(a).

**Ruling:** Motion denied as to Count I.

## 2. Tortious Interference with Contractual Relations (Count II – Against All Defendants)

To state a claim for tortious interference, a plaintiff must show: (1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its breach, (4) the absence of justification, and (5) damages. *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007).

19

Plaintiff alleges that VEP and Vaquero intentionally induced Huard, Gordon, and Higginbotham to breach their RCAs by using Plaintiff's confidential information and soliciting Plaintiff's restricted clients. (DE 1, Compl. ¶¶ 96–147, 164–73.) Plaintiff pleads multiple examples: Huard and Gordon allegedly coordinated with VEP while still bound by RCAs to pursue Client E, using Plaintiff's pricing information to undercut Plaintiff's bids and secure a multimillion-dollar contract. (*Id.* ¶¶ 110–17, 124–29.) Higginbotham is alleged to have concealed VEP's involvement by forwarding VEP proposals to his personal email account rather than disclosing them to Plaintiff, thereby enabling the breach. (*Id.* ¶¶ 118–23, 128.) Plaintiff also alleges Defendants diverted a prospective contract with Client Z by funneling the opportunity from Plaintiff to VEP (*id.* ¶¶ 96–102), exchanged pricing information for Client PM while still employed (*id.* ¶¶ 130–35), and assisted VEP in soliciting Client FH (*id.* ¶¶ 145–47).

These allegations identify specific contractual obligations in the RCAs, Defendants' knowledge of those obligations, and overt acts to procure their breach without justification. Plaintiff further alleges damages in the form of lost contracts, diverted opportunities, and harm to goodwill. (*Id.* ¶¶ 176–86.) These allegations suffice at the pleading stage.

**Ruling:** Motion denied as to Count II.

### 3. Unjust Enrichment (Count III – Against All Defendants)

Unjust enrichment is an equitable doctrine requiring proof that: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant realized that benefit, and (3) retention of the benefit would be inequitable. *Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 467, 684 S.E.2d 756, 764 (2009).

Plaintiff alleges Defendants were enriched through its trade secrets, pricing information, and goodwill. (DE 1, Compl. ¶¶ 174–79.) While Defendants argue this claim is duplicative, unjust enrichment may be pled in the alternative where contract enforceability is challenged. *See* Fed. R. Civ. P. 8(d)(2). At this stage, the allegations are sufficient.

**Ruling:** Motion denied as to Count III.

### 4. Violation of the South Carolina Unfair Trade Practices Act (Count IV – Against All Defendants)

To state a claim under SCUTPA, a plaintiff must show: (1) the defendant engaged in an unlawful trade practice, (2) plaintiff suffered actual, ascertainable damages, and (3) the trade practice had an adverse impact on the public interest. *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998). Conduct affecting only the parties to a transaction is not enough. *See Ardis v. Cox*, 314 S.C. 512, 518, 431 S.E.2d 267, 271 (Ct. App. 1993).

Plaintiff alleges Defendants engaged in unfair competition by misappropriating its confidential information, soliciting restricted clients, and concealing their actions to undercut Plaintiff's pricing and secure contracts. (DE 1, Compl. ¶¶ 96–147, 180–186.) Plaintiff specifically alleges that Defendants used

21

confidential pricing and client knowledge to divert a multimillion-dollar contract with Client E, misdirected a prospective opportunity with Client Z, and conspired to pursue additional opportunities with Clients PM and FH. (*Id.* ¶¶ 110–29, 130–35, 145–47.) Plaintiff further alleges these acts were part of a calculated effort to replicate Plaintiff's business model and capture its market share, thereby harming not only Plaintiff but also competition in the petroleum and petrochemical waste services industry. (*Id.* ¶¶ 182–84, 193–203.)

According to the Complaint, Defendants' actions are not isolated but reflect an ongoing scheme that has the potential for repetition, placing other market participants and customers at risk. (*Id.* ¶ 200.) These allegations are sufficient at the pleading stage to satisfy the public interest element under SCUTPA, which may be shown by the likelihood of repetition. *See Daisy Outdoor Advert. Co. v. Abbott*, 322 S.C. 489, 496, 473 S.E.2d 47, 51 (S.C. 1996).

**Ruling:** Motion denied as to Count IV.

### 5. Breach of Duty of Loyalty (Count V – Against Individual Defendants)

South Carolina law imposes a common-law duty of loyalty on employees. *Berry v. Goodyear Tire & Rubber Co.*, 270 S.C. 489, 491, 242 S.E.2d 551, 552 (1978). Plaintiff alleges the Individual Defendants breached this duty by secretly assisting VEP while still employed by Plaintiff. According to the Complaint, Huard and Gordon coordinated with VEP on proposals for Client E and other opportunities while bound to act in Plaintiff's best interests. (DE 1, Compl. ¶¶ 96–147.) Higginbotham allegedly concealed these activities, including forwarding VEP proposals to his personal

account rather than disclosing them to Plaintiff. (*Id.* ¶¶ 118–23, 128.) Plaintiff further alleges that the Individual Defendants misused confidential information, acted to divert additional opportunities, and concealed their misconduct until after their departures. (*Id.* ¶¶ 206–211.)

Taken together, these allegations plausibly state that the Individual Defendants acted in their own interests and in concert with VEP, rather than in Plaintiff's interests, while still employed by Plaintiff. At the pleading stage, this is sufficient to state a claim for breach of the duty of loyalty.

**Ruling:** Motion denied as to Count V.

### 6. Misappropriation of Trade Secrets – South Carolina Trade Secrets Act (Count VI)

A trade secret under the SCTSA is information that (1) derives independent economic value from not being generally known and (2) is subject to reasonable efforts to maintain its secrecy. S.C. Code Ann. § 39-8-20(5)(a) (2024). To prove misappropriation, a plaintiff must establish: (1) the existence of a trade secret, (2) communicated in confidence, (3) disclosed in breach of confidence, (4) acquired with knowledge of the breach, and (5) used to plaintiff's detriment. *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 725 (D.S.C. 2007).

Plaintiff alleges that its trade secrets include confidential information relating to its customers and prospective customers, including detailed customer lists, contract terms, pricing structures, and client preferences; its pricing models and strategies; refinery processes and technical data; and proprietary operational, sales, and financial information. (DE 1, Compl. ¶¶ 86–88, 216–18.) Plaintiff further alleges

23

it undertook reasonable measures to protect this information, including requiring employees to sign restrictive covenant agreements, maintaining confidentiality protocols, and limiting access on a need-to-know basis. (*Id.* ¶¶ 51–53, 217.)

According to the Complaint, the Individual Defendants, while still employed, had access to this information and disclosed it to VEP to assist in competing against Plaintiff. (*Id.* ¶¶ 219–25.) Plaintiff alleges that Huard and Gordon used confidential pricing information and historical client data to undercut Plaintiff's bids and secure a multimillion-dollar contract with Client E for VEP. (*Id.* ¶¶ 110–17, 124–29, 220–22.) Higginbotham allegedly concealed this activity by forwarding VEP proposals to his personal email rather than disclosing them to Plaintiff. (*Id.* ¶¶ 118–23, 128, 223.) Plaintiff further alleges Defendants misappropriated confidential information to pursue a California kiln project with Client Z (*id.* ¶¶ 96–102, 224), exchanged pricing information for Client PM (*id.* ¶¶ 130–35, 225), and diverted work with Client FH (*id.* ¶¶ 145–47, 226).

Plaintiff also alleges that former employee Roberto "Beto" Gomez, while aligned with VEP, misappropriated confidential refinery information by emailing Crude Separation Unit ("CSU") data to his personal account and photographing Plaintiff's refinery equipment, which VEP allegedly sought to replicate. (*Id.* ¶¶ 136–44, 227–29.) Plaintiff claims Defendants knowingly accepted and used this misappropriated information to solicit Plaintiff's clients and replicate its competitive offerings, thereby causing Plaintiff damages in the form of lost business and erosion of goodwill. (*Id.* ¶¶ 230–38.)

24

These allegations identify the categories of information at issue, Plaintiff's efforts to maintain their secrecy, Defendants' acquisition of that information in breach of confidence, and the use of the information to Plaintiff's detriment. At this stage, Plaintiff has adequately alleged misappropriation under the SCTSA. *See Carolina Chem. Equip. Co. v. Muckenfuss*, 322 S.C. 289, 471 S.E.2d 721, 724–25 (Ct. App. 1996).

**Ruling:** Motion denied as to Count VI.

### 7. Misappropriation of Trade Secrets – Defend Trade Secrets Act (Count VII)

The Defend Trade Secrets Act defines "trade secret" broadly to encompass a wide range of information, including "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]" 18 U.S.C. § 1839(3). To qualify as a trade secret, the information must:

1. be subject to reasonable measures to maintain its secrecy; and

2. derive independent economic value, actual or potential, from not being generally known or readily ascertainable by others who could obtain value from its disclosure or use.

*See id.* at (3)(A)-(B). A "trade secret" under the act is nearly identical to the SCTSA. *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1037 (D.S.C. 2021). To state a claim under the DTSA, a plaintiff must allege "(1) the existence of a

trade secret as defined in the statute; (2) a nexus between the secret and interstate or foreign commerce; and (3) misappropriation of such trade secret." *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432, 448 (W.D. Va. 2024).

Here, Plaintiff identifies its trade secrets as confidential customer information—including customer lists, preferences, and contract details—as well as pricing structures and strategies, refinery processes, and technical data, and proprietary operational and financial information. (DE 1, Compl. ¶¶ 86–88, 239–41.) Plaintiff alleges that it safeguarded this information through confidentiality agreements, restricted access, and other secrecy measures. (*Id.* ¶¶ 51–53, 240.)

Plaintiff further alleges that Defendants misappropriated this information to solicit clients and secure contracts in multiple states, including: a multimillion-dollar contract with Client E (*id.* ¶¶ 110–17, 124–29, 243); diversion of a California kiln project with Client Z (*id.* ¶¶ 96–102, 244); pursuit of opportunities with Client PM (*id.* ¶¶ 130–35, 245); and solicitation of Client FH (*id.* ¶¶ 145–47, 246). Plaintiff also alleges that former employee Roberto "Beto" Gomez misappropriated refinery process data, including Crude Separation Unit ("CSU") yield information and photographs of Plaintiff's centrifuge equipment, which Defendant VEP allegedly sought to replicate in its Texas operations. (*Id.* ¶¶ 136–44, 247–49.) Plaintiff asserts that these misappropriations were directed toward projects and clients in South Carolina, Texas, California, and elsewhere, thereby affecting interstate commerce. (*Id.* ¶¶ 239–56.)

26

Finally, Plaintiff alleges that the trade secrets at issue possessed independent economic value not generally known to competitors, and that Defendants' use of this information allowed them to shortcut the development of competitive refinery services, causing Plaintiff to lose market share and goodwill. (*Id*. ¶¶ 250–56.)

Taken together, these allegations sufficiently plead the existence of trade secrets, reasonable measures to maintain their secrecy, their misappropriation by Defendants, and the requisite nexus to interstate commerce. Accordingly, Plaintiff states a plausible claim under the DTSA.

**Ruling:** Motion denied as to Count VII.

### 8. Civil Conspiracy (Count VIII – Against All Defendants)

To state a claim for civil conspiracy, Plaintiff must allege: (1) a combination of two or more persons, (2) to commit an unlawful act or lawful act by unlawful means, (3) an overt act in furtherance of the agreement, and (4) resulting damages. *Paradis v. Charleston Cnty. Sch. Dist.*, 433 S.C. 562, 574–75, 861 S.E.2d 774, 780 (2021) (citing *Charles v. Texas Co.*, 192 S.C. 82, 5 S.E.2d 464 (1939)).

Plaintiff alleges that Defendants entered into a combination and agreement to misappropriate trade secrets, solicit Plaintiff's clients, and conceal their misconduct from Plaintiff. (DE 1, Compl. ¶¶ 257–61.) Plaintiff asserts that this agreement was carried out through a coordinated scheme in which the Individual Defendants supplied confidential pricing, client, and refinery data to VEP, and in which VEP and Vaquero knowingly accepted and used that information to compete with Plaintiff. (*Id*. ¶¶ 257–60.)

As overt acts in furtherance of the conspiracy, Plaintiff alleges that:

- Huard and Gordon used Plaintiff's confidential pricing to help VEP secure a multimillion-dollar contract with Client E. (*Id.* ¶¶ 110–17, 122–29.)

- Higginbotham forwarded VEP proposals to his personal email account, concealing Defendants' solicitation of Client E while still employed by Plaintiff. (*Id.* ¶¶ 118–23, 128.)

- Higginbotham and Huard diverted a kiln opportunity with Client Z to VEP. (*Id.* ¶¶ 99–107.)

- Defendants exchanged pricing information to pursue work with Client PM. (*Id.* ¶ 133.)

- Defendants coordinated to solicit Client FH away from Plaintiff. (*Id.* ¶¶ 134–35.)

- Former employee Gomez emailed CSU yield data to his personal account and photographed refinery equipment, which VEP allegedly used to replicate Plaintiff's processes. (*Id.* ¶¶ 140–49.)

Plaintiff further alleges that these overt acts were designed to advance the conspiracy by accelerating VEP's market entry and replicating Plaintiff's competitive model without investing in the development of its own client relationships, contracts, or processes. (*Id.* ¶¶ 257–63.)

Finally, Plaintiff alleges resulting damages in the form of lost contracts, diverted opportunities, and erosion of goodwill and customer relationships. (*Id.* ¶¶ 264–66.) At the pleading stage, these allegations are sufficient to state a claim for civil conspiracy.

**Ruling:** Motion denied as to Count VIII.

**Conclusion on Rule 12(b)(6)**

Defendants' Rule 12(b)(6) motion (DE 26) is **denied in its entirety**. Plaintiff's Verified Complaint, together with the RCAs and detailed factual allegations, contains sufficient factual matter to state plausible claims under the applicable legal standards. Defendants alternatively move for a more definite statement under Rule 12(e). Plaintiff's Verified Complaint, while broad in places, attaches the RCAs, identifies the Individual Defendants, and alleges specific client diversions and misappropriation of trade secrets. These allegations are sufficient to allow Defendants to frame a responsive pleading. The Complaint is not "so vague [or] ambiguous that the defendant[s] cannot reasonably be required to answer." *Hodgson v. Va. Bapt. Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973). Accordingly, the motion for a more definite statement is denied.

## C.     Temporary Restraining Order and Preliminary Injunction (Rule 65)

### 1.     *Winter* Factors

Plaintiff moves for a TRO/PI seeking to enjoin Defendants "from directly or indirectly retaining, using, disclosing, and misappropriating Plaintiff's trade secret and confidential information[,]" among other things. (DE 4 at 25.) Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008). To obtain a preliminary injunction, a plaintiff must establish:

1. a likelihood of success on the merits,

2. a likelihood of irreparable harm absent injunctive relief,

3. that the balance of equities tips in its favor, and

4.  that the injunction is in the public interest.

*Id.* at 20. The burden rests on the plaintiff to make a "clear showing" on each factor. *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020).

### i. Likelihood of Success on the Merits

As discussed above in Section B, Plaintiff has plausibly stated claims for breach of contract, misappropriation of trade secrets under both state and federal law, breach of the duty of loyalty, and related claims. At the preliminary injunction stage, the question is not whether Plaintiff will ultimately prevail, but whether Plaintiff has shown a "clear likelihood" of success on at least one claim. *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

The RCAs attached to the Complaint (DE 1, Exs. 1–6) support Plaintiff's position that Huard, Gordon, and Higginbotham undertook enforceable contractual obligations. Allegations that Defendants diverted specific client contracts (DE 1, Compl. ¶¶ 96–147), used confidential pricing to undercut Plaintiff's bids (*id.* ¶¶ 110–17), and misappropriated proprietary refinery information (*id.* ¶¶ 136–44) are corroborated by attached exhibits. These facts, at least at this stage, demonstrate a likelihood of success on Plaintiff's breach of contract and trade secret misappropriation claims.

### ii. Likelihood of Irreparable Harm

"Irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). The Fourth Circuit has further held that "when the failure to grant preliminary relief creates the possibility of

permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Id.* at 552. Loss of market share or price erosion also constitutes irreparable harm. *Z-Man Fishing Prods., Inc. v. Renosky*, 790 F. Supp. 2d 418, 433 (D.S.C. 2011). Similarly, "[t]he loss of even a single trade secret is irreparable harm, and the threatened disclosure of a trade secret supports the imposition of injunctive relief." *Nucor Corp. v. Bell*, C/A No. 2:06-cv-02972-DCN, 2008 WL 9894350, at *20 (D.S.C. Mar. 14, 2008).

Here, Plaintiff alleges that Defendants' conduct has resulted in the loss of a multimillion-dollar contract with Client E, the diversion of opportunities with Clients Z and PM, and ongoing threats to Plaintiff's proprietary refinery data. (DE 1, Compl. ¶¶ 96–147.) These alleged injuries implicate customer relationships, goodwill, and trade secrets—harms courts consistently recognize as irreparable because damages cannot fully restore a company's market position or protect the confidentiality of proprietary information. *See Multi-Channel TV Cable*, 22 F.3d at 552; *Nucor*, 2008 WL 9894350, at *20.

Moreover, the RCAs themselves provide that a breach would cause irreparable harm and entitle Plaintiff to injunctive relief. (*See*, e.g., DE 1-3 ¶ 6.) While not dispositive, such provisions reflect the parties' own recognition that monetary damages would be inadequate to remedy breaches of confidentiality and non-solicitation obligations. This contractual stipulation reinforces Plaintiff's showing of irreparable harm. Plaintiff has thus made a clear showing of likely irreparable harm absent injunctive relief.

### iii. Balance of Equities

The balance of equities weighs in Plaintiff's favor. Plaintiff faces ongoing loss of customer relationships and disclosure of proprietary data if relief is denied. Defendants, by contrast, would be required only to avoid using Plaintiff's confidential information and to comply with contractual restrictions they agreed to. Such obligations impose no undue hardship beyond compliance with existing legal duties. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991).

### iv. Public Interest

The public interest favors the enforcement of valid contracts and the protection of trade secrets. *See Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998) (recognizing the role of restrictive covenants in protecting business goodwill); *Uhlig, LLC v. Shirley*, No. 6:08-1208, 2008 WL 906761, at *8 (D.S.C. Aug. 5, 2008) (finding public interest in protecting trade secrets). An injunction here advances both principles by preventing unfair competition and preserving confidential information.

### 2. Preliminary Injunction

For the reasons stated in this Court's analysis of the *Winter* factors, and upon the present record, the Court concludes that Plaintiff has made a clear showing of likely success on the merits as to its contract and trade secret claims, that it faces irreparable harm absent preliminary relief, that the balance of equities favors interim relief, and that such relief serves the public interest. Accordingly, the motion for preliminary injunction is **GRANTED** as set forth below.[7]

---

[7]    Plaintiff also requested a Temporary Restraining Order in the same filing. (DE 4.) Because the Court has resolved the request for injunctive relief on full briefing and a

Rule 65(d)(1), Fed. R. Civ. P., provides that "[e]very order granting an injunction must:

(A)    state the reasons why it issued;

(B)    state its terms specifically; and

(C)    describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."

"[T]he terms of Rule 65(d) 'are mandatory and must be observed in every instance.'" *Wudi Indus. (Shanghai) Co. v. Wong*, 70 F.4th 183, 189 (4th Cir. 2023) (quoting another source).

### i. Definitions.

For purposes of this Order, "Confidential Information" and "Trade Secrets" have the meanings ascribed to them in the operative RCAs and applicable law; "Restricted Clients" means: (a) as to Defendant Huard, any current or prospective customer of Plaintiff to whom he sold or marketed products or services on Plaintiff's behalf within the twenty-four (24) months preceding his separation; and (b) as to Defendants Gordon and Higginbotham, any customer or prospective customer of Plaintiff with whom they had material contact or regarding whom they obtained non-public information by virtue of their employment. "Acting in concert" includes any person or entity with notice of this Order who knowingly aids or abets conduct that this Order prohibits.

### ii. Use and Disclosure of Protected Information.

---

developed record, the request for a TRO is **denied as moot**. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974) (explaining that a TRO is designed only to preserve the status quo until a preliminary injunction hearing may be held).

Defendants Huard, Gordon, and Higginbotham are hereby **ENJOINED**, and VEP and Vaquero are **ENJOINED** while acting in concert with any Individual Defendant, from directly or indirectly using, retaining, or disclosing Plaintiff's Confidential Information or Trade Secrets obtained during the Individual Defendants' employment with Plaintiff.

### iii. Solicitation/Interference with Restricted Clients.

For a period coextensive with the applicable RCA restrictions (including any contractual tolling), the Individual Defendants are **ENJOINED** from directly or indirectly, on their own behalf or on behalf of any competitor in Plaintiff's lines of business, (a) soliciting, calling on, attempting to sell to, diverting, or accepting business from any Restricted Client with respect to products or services competitive with those offered by Plaintiff; or (b) interfering with, disrupting, or attempting to induce the termination, reduction, or alteration of Plaintiff's relationships with any Restricted Client.

### iv. Inducement and Concerted Conduct.

The Corporate Defendants are **ENJOINED** from (a) inducing, encouraging, or participating in any violation by the Individual Defendants of the obligations described in Paragraphs (ii)–(iii) of this Section, and (b) using, relying on, or benefiting from any Confidential Information or Trade Secrets of Plaintiff that any Individual Defendant or any person acting in concert has provided to Corporate Defendants.

### v. Interference with Employee Relationships.

Defendants are ENJOINED from soliciting or inducing any current employee of Plaintiff, about whom any Individual Defendant learned non-public information during employment with Plaintiff, to breach confidentiality obligations to Plaintiff or to disclose Plaintiff's Confidential Information or Trade Secrets.

### vi. Possession and Return of Plaintiff Property.

Within seven (7) days of this Order, Defendants shall (a) identify, preserve, and deliver to Plaintiff's counsel all originals and copies (including electronic copies) of documents, files, data, and other materials in their possession, custody, or control that contain Plaintiff's Confidential Information or Trade Secrets; (b) identify all devices, accounts, or repositories where such materials were stored, transmitted, or accessed; and (c) certify under oath the steps taken to comply with this paragraph. Nothing in this paragraph requires destruction of materials prior to preservation; any forensic preservation shall be conducted in a manner that maintains evidentiary integrity.

### vii. Carveouts.

Nothing in this Order prohibits: (a) lawful competition that does not use or disclose Plaintiff's Confidential Information or Trade Secrets and does not involve solicitation of Restricted Clients; (b) employment of the Individual Defendants by Corporate Defendants, provided they comply with this Order and their RCAs; or (c) general advertising not targeted to Restricted Clients.

### viii. Duration.

This preliminary injunction shall remain in effect until further order of the Court or until final judgment, provided that the solicitation/interference restrictions

in Section 2–Paragraph (iii) shall not extend beyond the period permitted by the applicable RCAs, including any contractual tolling attributable to proven periods of breach.

### 3.     Security (Fed. R. Civ. P. 65(c))

Having considered the nature and scope of the relief, the parties' submissions, and the record evidence regarding the alleged diversion of high-value customer relationships and the competitive posture of the market, the Court fixes security in the amount of THIRTY THOUSAND DOLLARS ($30,000). In reaching this amount, the Court notes: (i) Plaintiff requested a $30,000 bond, which allocates a meaningful—yet not punitive—sum in light of multiple enjoined parties and the tailored scope of relief; (ii) the injunction does not bar employment or lawful competition and is limited to non-use/non-disclosure and targeted non-solicitation obligations coextensive with the RCAs, thereby reducing potential wrongful-injunction exposure; and (iii) nevertheless, given the asserted value of disputed opportunities and to ensure an adequate fund to cover costs and damages in the event Defendants are wrongfully enjoined, a bond greater than the nominal amounts sometimes imposed in confidentiality-only cases is warranted. Any party may move to increase or decrease the bond upon a particularized evidentiary showing, without prejudice to any defense.

### 4.     Effectiveness and Notice

This preliminary injunction is effective upon Plaintiff's posting of the required security. Plaintiff shall promptly serve this Order on all Defendants, and on any

person or entity reasonably believed to be acting in concert with them, and file proof of service.

### E.     Motion for Expedited Discovery

Plaintiff also moved for expedited discovery in connection with its request for preliminary injunctive relief. (DE 23.) Courts in this District recognize that expedited discovery may be appropriate when necessary to prepare for a preliminary injunction hearing. *See Synthes USA, LLC v. Davis*, No. 4:17-cv-2879-RBH, 2017 WL 5972705, at 9 (D.S.C. Dec. 1, 2017) (explaining the modified preliminary injunction test and good cause test for early discovery).

Here, however, the Court has resolved Plaintiff's motion for a preliminary injunction on full briefing and a developed record. Because there is no longer a need for expedited discovery before a preliminary injunction hearing, a ruling on Plaintiff's motion is unnecessary at this time. Plaintiff may pursue discovery under the ordinary schedule established by Rule 26 and the Court's forthcoming scheduling order. If discovery disputes remain, they can be managed under Rule 26(f) and the forthcoming scheduling order.

Accordingly, Plaintiff's Motion for Expedited Discovery (DE 23) is denied.

### IV.     CONCLUSION

Having carefully considered the motions, the record, and the applicable law, the Court concludes as follows:

1. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (DE 25) is **DENIED WITHOUT PREJUDICE**.

2. Defendants' Motion to Dismiss for Failure to State a Claim or, in the Alternative, for a More Definite Statement (DE 26) is **DENIED**.

3.  Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (DE 4) is **GRANTED IN PART** as set forth above. Defendants are enjoined from (a) using or disclosing Plaintiff's confidential and trade secret information; (b) soliciting Plaintiff's restricted clients in violation of the Restrictive Covenant Agreements; and (c) otherwise inducing breaches of the Restrictive Covenant Agreements. The request for a Temporary Restraining Order is **DENIED AS MOOT**.

4.  Under Rule 65(c) of the Federal Rules of Civil Procedure, the Court sets security for **$30,000** as a condition of this injunctive relief.

5.  Plaintiff's Motion for Expedited Discovery (DE 23) is **DENIED** in light of the Court's ruling on Plaintiff's request for preliminary injunctive relief.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 19, 2025